UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 05-21952 |
| | ) | |
| PATTI MEEKS, | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| MARY ANN RABIN, | ) | Adversary Proceeding No. 06-1204 |
| Plaintiff, | ) | |
| | ) | Judge Arthur I. Harris |
| v. | ) | |
| | ) | |
| PATTI MEEKS and JOSEPH | ) | |
| MCGINNESS, | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

Before the Court are cross-motions for summary judgment. The trustee asks

the Court to find that proceeds from the voluntary prepetition sale of debtor's

residence are not exempt pursuant to Ohio's homestead exemption and must be

turned over to the estate. For the reasons stated below, the trustee's motion for

summary judgment is granted, and defendant McGinness's motion for summary

judgment is denied. The Court finds that Ohio's homestead exemption does not

protect proceeds derived from the voluntary sale of a debtor's residence if the

debtor has shown no intent at the time of sale to reinvest the proceeds in another

homestead within a reasonable time.

## JURISDICTION

Proceedings to determine exemptions and for the turnover of alleged estate funds are core under 28 U.S.C. § 157(b)(2)(B) and (E). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND

Based on joint stipulations (Docket #12) and other documents filed with the Court, the following facts are undisputed. On or about July 27, 2005, Patti Meeks sold her residence at 6959 Parmalee Drive, Mentor, Ohio (Mentor property). The sale netted $5,306.54. On August 11, 2005, Meeks filed her Chapter 7 petition. In her schedules debtor indicates that the attorney who represented her in sale of the Mentor property, Joseph McGinness, is holding proceeds from the sale, and debtor claims a $400 exemption in those proceeds. *See* Schedules B & C. The debtor's schedules also indicate that debtor owns a one-half interest in real estate at 65 Mulwal Drive, Painesville, Ohio (Painesville property), and debtor claims a $5,000 homestead exemption in the Painesville property. *See* Schedules A & C. The debtor has not filed an amendment to the exemptions, and the time for objecting to exemptions has passed without the trustee filing an objection.

2

On March 2, 2006, the trustee filed this adversary proceeding seeking a judgment that the $3,805.54 held by McGinness is property of the estate and should be turned over. Attached to the complaint is a letter from McGinness stating: "Please be advised that these funds in my escrow account are the proceeds from the sale of [debtor's] residence and claimed as exempt in the bankruptcy as a homestead exemption. Therefore, I decline to turnover the funds."

Debtor and McGinness filed separate Answers (Dockets #6 & #7) indicating that they claimed the funds as exempt under Ohio's homestead exemption, O.R.C. § 2329.66(A)(1), and McGinness admitted that he was holding $3,805.54. On June 1, 2006, the trustee filed her motion for summary judgment (Docket #13) arguing that Ohio's homestead exemption did not apply once the property was sold prepetition. On the same day, McGinness filed his own motion for summary judgment (Docket #14) claiming that the property is exempt, and the debtor filed an opposition to the trustee's motion (Docket #15) repeating her belief that the funds were exempt. On June 8, 2006, the trustee filed a response (Docket #16) to McGinness's motion. The Court is now ready to rule.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary

3

judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

"The fact that both parties have moved for summary judgment does not

4

mean that the court must grant judgment as a matter of law for one side or the other." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*; *accord In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 735 (6th Cir. 2001) (citing several cases reaching same conclusion).

## DISCUSSION

The debtor, in her schedules, claimed Ohio's $400 wildcard exemption in the monies held by McGinness. *See* Ohio Rev. Code Ann. § 2329.66(A)(18). The time to object to this exemption has passed without an objection being filed. *See* Fed. R. Bankr. P. 4003; *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). Therefore, the debtor is allowed a $400 exemption in the monies held by McGinness.

On the other hand, the debtor, in her schedule C, does not claim the $5,000 homestead exemption in the monies held by McGinness. Thus, the defendants' opposition to the trustee's turnover motion is currently based upon an unclaimed exemption. The Court, however, recognizes that schedules may be amended "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a); *see Lucius v. McLemore*, 741 F.2d 125 (6th Cir. 1984); *see also In re Basch*,

5

341 B.R. 615, 623 (Bankr. W.D. Mich 2006) (declining to reach constitutional issue in objection to exemption because debtor can avoid the issue by amending his scheduled exemption); *cf. In re Ladd*, __ F.3d __, No. 05-1606, 2006 WL 1192953, at *3 (8th Cir. May 5, 2006) (finding claim preclusion did not bar debtors from amending schedules to claim state exemptions after trustee had objected to federal homestead exemption and default judgment had been entered against debtors). *But see In re Robinson*, 292 B.R. 599 (Bankr. S.D. Ohio 2003) (noting that Rule 1009(a) is liberal "but does not afford debtors a completely unfettered right to amend deficient schedules and statements"). Therefore, as a matter of judicial economy, the Court will address the defendants' assertions that the monies in McGinness's possession should be exempt pursuant to Ohio's homestead exemption.

A trustee's objection to a debtor's claim of exemption is governed by 11 U.S.C. § 522 and Rule 4003 of the Federal Rules of Bankruptcy Procedure. Rule 4003(c) states that the objecting party, the trustee, "has the burden of proving that the exemptions are not properly claimed." Section 522 lists certain property that an individual debtor may exempt from property of the estate, and section 522(b)(1) allows a state to opt out of these federal exemptions. Pursuant to Ohio Rev. Code Ann. § 2329.662, Ohio has elected to opt out and instead specify its

6

own exemptions, which are listed in Ohio Rev. Code Ann. § 2329.66.

*OHIO REV. CODE ANN. § 2329.66(A)(1)*

The debtor claims that the proceeds from the sale of the Mentor property are exempt under Ohio Rev. Code Ann. § 2329.66(A)(1). This provision provides in pertinent part:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
> . . . .
>> (1) . . .
>>> (b) In the case of all other judgments and orders, the person's interest, not to exceed five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.

The plain language of the statute appears unambiguous. The statute states that a $5,000 interest in one parcel of real property that the "person or a dependent of the person uses as a residence" may be held exempt from "execution, garnishment, attachment, or sale to satisfy a judgment or order." The bankruptcy trustee is attempting an involuntary execution on the proceeds, so the ability of the debtor to exempt the proceeds under subsection (A)(1)(b) is at issue. *Cf. In re Moreland*, 21 F.3d 102 (6th Cir. 1994) (finding debtor's homestead exemption could not be "exercised" in bankruptcy to strip a judicial lien because no "judicial sale or involuntary execution" was contemplated), *superseded by statute*,

7

Bankruptcy Reform Act of 1994 § 303, Pub. L. No. 103-394, 108 Stat. 4106, *as recognized in In re Holland*, 151 F.3d 547, 550 (6th Cir. 1998) (stripping judicial lien in bankruptcy after finding that new federal statutory definition of impairment replaced Ohio's definition). Subsection (A)(1)(b), however, only explicitly exempts a $5,000 interest in one parcel of real property that the debtor "uses as a residence." Debtor no longer resides at the Mentor property. Debtor only has proceeds from the sale of real property that once was her residence. Thus, the statute does not appear to exempt any of the proceeds derived from the voluntary sale of debtor's residence.

A number of states have statutes that explicitly protect homestead proceeds for a short period of time. *See, e.g.*, 735 Ill. Comp. Stat. Ann. 5/12-906 (one year protection of proceeds); Minn. Stat. Ann. § 510.07 (one year); Neb. Rev. Stat. Ann. § 40-116 (six months); Tex. Prop. Code Ann. § 41.001(c) (six months). A few states find an "implied" exemption in proceeds derived from a voluntary sale of the homestead. These states have homestead statutes that, like Ohio, do not mention proceeds, but the courts cite to the general rule that exemptions should be construed liberally. *See Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So. 2d 201 (Fla. 1962); *Millsap v. Faulkes*, 20 N.W.2d 40, 41 (Iowa 1945) ("[O]ne who sells his homestead may for a reasonable time hold the proceeds

8

exempt in order to reinvest in a new homestead to the extent in value of the old."); *Marcum v. Edwards*, 205 S.W. 798, 799-800 (Ct. App. Ky. 1918) ("[I]f [the debtor] conceive[s] it to be necessary, to improve his condition and that of his family, to dispose of his homestead with the purpose of investing the proceeds in another . . . , he should have the right to do so, provided he carries out his purpose and intention within a reasonable time."); *Field v. Goat*, 173 P. 364, 365 (Okla. 1918) (reaffirmed by *Harrell v. Bank of Wilson*, 445 P.2d 266, 269-70 (Okla. 1968)) ("[T]o give full effect and vitality to . . . the exemption of the homestead, . . . the exemption . . . must be held to impliedly extend to the proceeds of a voluntary sale of the homestead bona fide intended to be invested in another homestead."); *Watkins v. Blatschinski*, 40 Wis. 347 (Wis. 1876) ("This undoubtedly is the policy and spirit of the statute, to allow a person to sell one homestead and buy another; and the exemption must cover the change, and protect the proceeds while the transfer is being made."), *superceded by statute,* Wis. Stat. Ann. § 815.20 (giving two year protection to proceeds). Other courts note that the legislature has explicitly protected proceeds in other exemption statutes and to find an "implied" exemption of proceeds would usurp the legislature's role. *See In re Schalebaum*, 273 B.R. 1, 2-3 (Bankr. D.N.H. 2001) (finding homestead right is "to provide shelter unless there is an involuntary termination of the right" and therefore

9

proceeds from voluntary sale are not protected because the real estate is not occupied as required); *In re Blair*, 125 B.R. 303 (Bankr. D.N.M. 1991) (noting that many states now have statutes that explicitly cover proceeds and the legislature has had many chances to amend their homestead statute to include similar language); *Drennen v. Wheatley*, 195 S.W.2d 43, 44-45 (Ark. 1946) (" 'In the absence of statutory provisions to the contrary, the voluntary sale of homestead property is held, in a majority of jurisdictions, to be a complete extinguishment of the homestead right; and consequently the proceeds of such a sale, until invested in other exempt property, may be subjected to the claims of creditors.' " (quoting 26 Am. Jur. 31)).

Courts are also split regarding whether other types of in-kind exemption statutes, like statutes exempting vehicles or "tools of the trade," should be interpreted to protect the proceeds from the voluntary sale of the exempt property even though proceeds are not explicitly mentioned in the statute. *Compare In re Fager*, 274 B.R. 537, 539 (Bank. D. Colo. 2002) ("The fact that the legislature referred to proceeds in some instances and not others in these exemption statutes indicates that when exempt property is transformed into another form of property, it does not necessarily retain its exempt status."), *and In re Ehrich*, 110 B.R. 424, 429 (Bankr. D. Minn. 1990) ("Recognizing a derivative exemption for sale

10

proceeds in this case would be a creation out of whole cloth, resulting in protections which would be much broader than those allowed [by statute]. As such, it would be nothing more than an impermissible exercise in judicial legislation.), *with In re Larson*, 260 B.R. 174, 189 n.16 (Bankr. D. Colo. 2001) ("[T]his Court holds the proceeds [from equipment] are exempt as the Debtors have indicated an intent to use the proceeds to continue in their ranching operations."), *and Auto Owners Ins. v. Berkshire*, 588 N.E.2d 1230, 1233 (Ill. App. 2d 1992) ("A debtor may trace the exemption from the exempt asset to the liquid form, but the concept of tracing is not limitless. So long as the debtor continues to hold and to use the funds for the support of the debtor and his family, the exemption statutes require the exemption of funds traceable from exempt payments."). *See generally Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159, 162 (1962) (finding veteran benefits retain exempt status after being deposited in federal savings and loan association because funds still available for support and maintenance and not shown to be a permanent investment).

In states with case law recognizing a debtor's "implied" right to protect proceeds derived from the voluntary sale of homestead property, the courts have placed strict limitations on the applicability of the implied exemption:

> [W]e hold the proceeds of a voluntary sale of a homestead to be exempt

11

from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time. Moreover, only *so much* of the proceeds of the sale as are intended to be reinvested in another homestead may be exempt under this holding. Any surplus over and above that amount should be treated as general assets of the debtor. We further hold that in order to satisfy the requirements of the exemption the funds must not be commingled with other monies of the vendor but must be kept separate and apart and held for the sole purpose of acquiring another home. The proceeds of the sale are not exempt if they are not reinvested in another homestead in a reasonable time or if they are held for the general purposes of the vendor.

*Orange Brevard Plumbing & Heating Co.*, 137 So.2d at 206.

Ohio's homestead exemption statute does not specifically exempt proceeds derived from the voluntary sale of a homestead, and no Ohio court has addressed whether subsection (A)(1)(b) should be liberally construed to protect the proceeds derived from a voluntary sale. *Cf. Daugherty v. Central Trust Co. of Northeastern Ohio, N.A.*, 28 Ohio St. 3d 441, 445, 504 N.E.2d 1100, 1103 (1986) ("[P]ersonal earnings exempt from execution . . . retain their exempt status when deposited in a personal checking account, so long as the source of the exempt funds is known or reasonably traceable."). This Court, however, does not have to reach that question. Instead, this Court finds that if proceeds were protected, they would only be protected where the debtor has an abiding good faith intention at the time of the sale to reinvest the proceeds in another homestead within a reasonable time.

12

This is the standard that has been uniformly established by courts who find an "implied" protection of homestead proceeds.

Here, the debtor has provided no evidence of intent at the time of sale to reinvest proceeds in another homestead within a reasonable time. The home was sold in July 2005, and the proceeds have remained with the debtor's attorney for almost a year. Defendants' briefs make no mention of debtor's intent to use the money to purchase a new residence. Instead, the only evidence before the Court is that debtor has already claimed, under penalty of perjury, the Painesville property as her homestead. Debtor's petition and statement of affairs also indicate, under penalty of perjury, that debtor moved from Mentor, Ohio, to Plant City, Florida, in June 2005. *See, e.g., Matter of England*, 975 F.2d 1168 (5th Cir. 1992) (finding that homestead proceeds from voluntary sale, which were statutorily protected, were no longer protected once new homestead is purchased); *Matter of Pagan*, 66 B.R. 196 (Bankr. N.D. Ohio 1986) (finding no homestead exemption in real property because debtor's immediate move into an apartment after filing bankruptcy showed that the real property was not his intended residence). Viewing the evidence in the light most favorable to the defendants, the Court finds that debtor has shown no intent at the time of sale to reinvest the proceeds in another homestead within a reasonable time. Thus, the proceeds from the sale of

13

debtor's Mentor property are not exempt under Ohio's homestead exemption. Only $400 of the $3,805.54 in McGinness's possession is exempt, pursuant to Ohio's wildcard exemption, and the rest of the money must be turned over as property of the estate.

## CONCLUSION

For the reasons stated above, the plaintiff-trustee's motion for summary judgment is granted, and defendant McGinness's motion for summary judgment is denied. Judgment is entered for the plaintiff and against the defendants for $3,405.54, and defendants are ordered to turnover $3,405.54 in funds currently being held in defendant McGinness's escrow account.

IT IS SO ORDERED.

Arthur I. Harris
United States Bankruptcy Judge

14